## Louis Oglesby, Administrator of the Estate of Frank Oglesby, Deceased, Appellant, v. Metropolitan West Side Elevated Railway Company, Appellee.

### Gen. No. 25,904.

1. NEGLIGENCE, § 19*—*what constitutes attractive nuisance.* That a child is first attracted upon the premises by another instru-mentality than the one inflicting the injury is not decisive of lia-bility, the question in cases of attractive nuisance being whether the owner maintained conditions which as a whole could reason-ably be expected to attract children.

2. NEGLIGENCE, § 19*—*what is definition, of attractive nuisances.* Attractive nuisances are such things causing injury, left exposed and unguarded, which are of such a character as to be an attraction to children, appealing to their childish curiosity and instincts.

3. NEGLIGENCE, § 194*—*when negligence as to attractive nuisance is question for jury.* In an action to recover for the death of a 10-year-old boy while playing in a vacant coal elevator of the defend-ant, where the evidence showed that the elevator and surrounding premises had been used by children for the purpose of play for a year and that. the ladders, runways, hoppers, etc., in the dimly lighted building were dangerous, it was a question for the jury to determine whether the elevator could reasonably be expected to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXIX. 21

attract children and whether it was negligence to leave it un-
guarded and open to access.

4. NEGLIGENCE, § 201*—*when negligence of child is question for
jury.* In an action for the death of a 10-year-old boy who was
killed while playing in a vacant coal elevator, presumably by fall-
ing into an unguarded hopper, where it appeared that children
had played about the premises for about a year prior to the acci-
dent, the question as to the degree of care of the child which he
was required to exercise, in view of his age, experience and ca-
pacity, was for the jury.

HOLDOM, P. J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES
M. WALKER, Judge, presiding. Heard in this court at the March
term, 1920. Reversed and remanded. Opinion filed October 11,
1920.

EGBERT ROBERTSON, for appellant.

ADDISON L. GARDNER and CARROLL H. JONES, for
appellee.

MR. JUSTICE McSURELY delivered the opinion of the
court.

March 17, 1916, Frank Oglesby, then 10 years and
2 months of age, was killed while playing in a vacant
coal elevator building belonging to defendant. The ad-
ministrator of the estate brought suit upon the theory
that defendant negligently maintained an attractive
nuisance which caused the death of the boy. Upon
trial the court directed a verdict for the defendant,
judgment was entered upon the verdict and plaintiff
appeals.

The premises on which the elevator stood were near
the Belt Line Railway and Harrison street in Chicago.
The elevated railway of defendant crossed the prop-
erty. The premises were partially inclosed by a fence,
but there were a number of openings or driveways,
while one side appears to have been almost wholly un-
inclosed. The coal elevator building was about the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

size and shape of an ordinary grain elevator consisting of a concrete foundation about 10 feet from the ground and walls for about 60 feet more, and above that the eaves and superstructure; its south side was immediately opposite an open space in the fence on Lexington street. On this side was a large opening into the building and also another one about 70 feet from the ground. On the opposite or north end of the building was an exterior frame which supported an iron stairway extending directly from the ground to the top of the building. At the top of this stairway was an opening leading over a horizontal ladder to a system of runways. This stairway was open approximately 20 feet from the ground and above that point was inclosed in a boxing; the foot of the stairway rested upon the ground outside of the building and there was nothing to bar the way of any one wishing to enter. This stairway was visible from Harrison street and from the elevated track of the defendant. Approximately the lower third of the building inside was open space floored with railroad tracks; above that were large concrete and steel hoppers or bins with openings in the bottoms through which coal might be delivered into the cars upon the tracks below. These hoppers extended the length of the building, were open and about 30 feet square at the top, about 30 feet deep and floored with concrete at the bottoms except for the openings referred to. Alongside the tops of these hoppers were steel runways affording access to them. From these runways vertical ladders led down into the hoppers along the sides. Children could descend into the hoppers and go through the openings in the bottom. These runways also ran to an opening in the south end of the building from which it was possible to get onto the roof and from this opening one could see a considerable distance over the neighborhood. Between the tops of the hoppers and the roof was the conveying machinery. The interior of the building was dimly

324   APPELLATE COURTS OF ILLINOIS.

Oglesby v. Metropolitan West Side El. Ry. Co., 219 Ill. App. 321.

lighted. Children could also obtain access to the building from the ground within a bucket conveyor which ran on the south wall outside.

It was shown that for some years previous to the accident the building was unoccupied, and there was testimony tending to show that for a year or more it had become a place in which the boys in the neighborhood played around the runways, hoppers, etc. Various children's games were played in the building; one of the neighborhood boys testified that he had played in this building in this way at least forty or fifty times. There was no evidence that the owner had made any attempt by closing the stairway or the opening in the building to prevent boys using it for this purpose or by any restrictions to free entrance to the lot. The neighborhood was partially manufacturing and partially residence.

Upon the day of the accident plaintiff's intestate, with other boys, was playing in this building most of the morning. The boys went home to luncheon and returned in the afternoon. There was testimony from some of the boys that they went to the premises in the afternoon to play in some freight cars which stood on a switch track running alongside of the building. The boys, including Frank Oglesby, played for some minutes in these cars and then he left, calling to one of the boys to follow him and entered the elevator building and proceeded up the stairway to the top. The other boys followed and as they got about to the top of the stairway heard "something fall" and investigating found Frank lying dead in the bottom of one of the hoppers. It is a fair inference that he either fell into the hopper from the runway or from the ladder leading down into the hopper.

Plaintiff's theory was that the building with its system of runways, hoppers, tracks, coal conveyors, ladders and stairways, unoccupied and unguarded and open to access by children constituted a dangerous in-

strumentality to children amounting to an attractive nuisance, and that the defendant maintaining it was under obligation to use reasonable care to prevent access by children thereto.

It is said the trial court was moved to direct for defendant because the evidence showed that plaintiff's intestate with the other boys went to the premises for the purpose of playing in some freight cars, and that after playing in the cars they went to the elevator. Hence it is argued they were not attracted to the premises by the elevator, but by the freight cars, and that under the doctrine of *McDermott v. Burke,* 256 Ill. 401, and the cases there cited, and *Prickett v. Pardridge,* 189 Ill. App. 307 [9 N. C. C. A. 76], there is no liability. The fallacy in this lies in the assumption that because the boys on this afternoon went first to the freight cars they were not attracted by the elevator. This assumption is refuted by the evidence that the elevator for a considerable time before this had been used as a place for playing and that the intestate himself had been playing there in the morning. The jury could reasonably believe that the boys were attracted to the premises by the opportunities for playing in both the freight cars and the elevator building. After a short time they left the freight cars for the elevator which, even upon this afternoon, was apparently the superior attraction.

That a child is first attracted upon the premises by another instrumentality than the one inflicting the injury is not decisive of liability. In *White v. Boydson,* 202 Ill. App. 49, the child was attracted by the noise of other children playing and did not know of the existence of the hoist which injured her. See also *Stollery v. Cicero & P. St. Ry. Co.,* 148 Ill. App. 499, affirmed in 243 Ill. 290; *Rost v. Parker Washington Co.,* 176 Ill. App. 245; *Donk Bros. Coal & Coke Co. v. Leavitt,* 109 Ill. App. 385. The question in these cases seems to be whether the owner maintained conditions

and instrumentalities which as a whole could reasonably be expected to attract children in playing, and not whether the particular instrumentality inflicting injury was the exclusive attraction.

We do not agree with the contention that the elevator cannot as a matter of law come under the doctrine of the attractive nuisance cases. Attractive nuisances have been defined to be such things causing injury, left exposed and unguarded, which are of such a character as to be an attraction to children, appealing to their childish curiosity and instincts. "The owner of land, where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition; for they being without judgment and likely to be drawn by childish curiosity into places of danger are not to be classed with trespassers, idlers and mere licensees." *City of Pekin v. McMahon*, 154 Ill. 141. Perhaps in all of the cases on the subject, the attractiveness of the premises or instrumentality for children's love of play is a controlling factor. Bearing in mind the testimony tending to show that the premises upon which the elevator building stood and the elevator itself had been used by the children of the neighborhood for the purpose of play for a year or more prior to the accident, and the character of ladders, runways, hoppers, stairways, etc., in the dimly lighted, empty building, we hold it was a proper question for the jury to determine whether it did or could reasonably be expected to attract children and whether it was negligence to leave it unguarded and open to access.

We do not think the fact that the entire interior of the building and the entrance at the north end might not be seen from the street is of controlling importance in view of the evidence tending to show that the premises had been used as a place for playing for a long time, from which the jury might conclude the owner had knowledge of this fact, or should have known it.

The question as to the degree of care the intestate was required to exercise in view of his age, experience and capacity, was likewise a question for the jury.

For the reasons above indicated we are of the opinion that the trial court was in error in instructing to find for the defendant, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DEVER, J., concurs.

HOLDOM, P. J., dissenting.